IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| THE FREEMAN MANUFACTURING & SUPPLY COMPANY, <br><br>     Plaintiff, <br><br> v. <br><br> JONATHAN SMITH, HARI PATEL, and JOHN DOE <br><br>     Defendants. | Civil Case No. 1:23-cv-1247-JPB <br><br> Conference is requested |

## <u>PRETRIAL ORDER</u>

### 1.

There are no motions or other matters pending for consideration by the court except as noted:

None pending, however Plaintiff anticipates filing a Motion in Limine, briefly set forth in Attachment H-1, below. Defendant Patel anticipates filing a Motion in Limine, briefly set forth in Attachment H-2, below.

### 2.

All discovery has been completed, unless otherwise noted, and the

1

court will not consider any further motions to compel discovery. (Refer to LR 37.1B).  Provided there is no resulting delay in readiness for trial, the parties shall, however, be permitted to take the depositions of any persons for the preservation of evidence and for use at trial.

Discovery has been completed for trial on the merits. Plaintiff requests the opportunity to serve Rule 34 production requests to discover evidence of Defendant Patel's net worth, assets and income, prior to trial, for purposes of a possible bifurcated punitive damages proceeding pursuant to O.C.G.A. § 16-14-6(c)(RICO), and O.C.G.A. § 51-10-6(a); § 51-12-5.1(d)(2). See also *Webster v. Boyett,* 269 Ga. 191, 196 (1998). Defendant Patel objects to the requested discovery. Discovery is closed. Bifurcation does not raise new issues regarding punitive damages, which has been in the case since its inception.

Defendant Patel objects to Plaintiff's use of witnesses who were not previously identified (e.g. Mr. Turco) during the discovery period. *See* Attachment H-2. In the event Plaintiff is permitted to call Mr. Turco or any such newly identified witness, Defendant Patel requests the right to reopen discovery for the limited purpose of taking the deposition(s) of newly identified witnesses.

Defendant Patel requests supplemental responses to discovery regarding Plaintiff's insurance claim relating to this matter.

3.

Unless otherwise noted, the names of the parties as shown in the caption to this Order and the capacity in which they appear are correct and complete, and there is no question by any party as to the misjoinder or non-joinder of any parties.

The names shown in the caption to this Order and the capacity in which they appear are correct, but not complete. Defendant Patel also is a Cross-Claim Plaintiff and Defendant Smith also is a Cross-Claim Defendant.

4.

Unless otherwise noted, there is no question as to the jurisdiction of the court; jurisdiction is based upon the following code sections. (When there are multiple claims, list each claim and its jurisdictional basis separately.)

28 U.S.C. § 1332. See also D.E. 44 at note 2 (Order addressing jurisdiction). For the cross-claims, Jurisdictional Basis: Supplemental, 28 U.S.C. § 1367.

5.

The following individually-named attorneys are hereby designated as lead counsel for the parties:

Plaintiff: Robert E. Rigrish

Defendant: George A. Koenig

6.

Normally, the plaintiff is entitled to open and close arguments to the jury. (Refer to LR39.3(B)(2)(b)).  State below the reasons, if any, why the plaintiff should not be permitted to open arguments to the jury.

None.

7.

The captioned case shall be tried ( X ) to a jury or (____) to the court without a jury, or (____) the right to trial by jury is disputed.

8.

State whether the parties request that the trial to a jury be bifurcated, i.e. that the same jury consider separately issues such as liability and damages.  State briefly the reasons why trial should or should not be bifurcated.

Yes, the parties request a bifurcated trial as to possible punitive

damages, as required by O.C.G.A. § 51-12-5.1; see also O.C.G.A. § 16-14-6(c). Plaintiff requests that the Court consider attorney fees and litigation costs on written submission, if the jury enters a verdict for Plaintiff which supports an award of attorney fees. Defendant Patel requests the jury decide any award of attorney's fees and litigation costs.

9.

Attached hereto as Attachment "A" and made a part of this order by reference are the questions which the parties request that the court propound to the jurors concerning their legal qualifications to serve.

10.

Attached hereto as Attachment "B-1" are the general questions which plaintiff wishes to be propounded to the jurors on voir dire examination.

Attached hereto as Attachment "B-2" are the general questions which defendant wishes to be propounded to the jurors on voir dire examination.

Attached hereto as Attachment "B-3", "B-4", etc. are the general questions which the remaining parties, if any, wish to be propounded to the jurors on voir dire examination.

The court, shall question the prospective jurors as to their address and

occupation and as to the occupation of a spouse, if any. Counsel may be permitted to ask follow-up questions on these matters. It shall not, therefore, be necessary for counsel to submit questions regarding these matters. The determination of whether the judge or counsel will propound general voir dire questions is a matter of courtroom policy which shall be established by each judge.

11.

State any objections to plaintiff's voir dire questions:

Response: Defendant Patel has no objections.

State any objections to defendant's voir dire questions:

Response: Plaintiff has no objections.

State any objections to the voir dire questions of the other parties, if any:  Not applicable.

12.

All civil cases to be tried wholly or in part by jury shall be tried before a jury consisting of not less than six (6) members, unless the parties stipulate otherwise.  The parties must state in the space provided below the basis for any requests for additional strikes. Unless otherwise directed herein, each side as a group will be allowed the number of peremptory

challenges as provided by 28 U.S.C. § 1870.  See Fed.R.Civ.P. 47(b).

None

### 13.

State whether there is any pending related litigation. Describe briefly, including style and civil action number.

None

### 14.

Attached hereto as Attachment "C" is plaintiff's outline of the case which includes a succinct factual summary of plaintiff's cause of action and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law creating a specific legal duty relied upon by plaintiff shall be listed under a separate heading. In negligence cases, each and every act of negligence relied upon shall be separately listed. For each item of damage claimed, plaintiff shall separately provide the following information: (a) a brief description of the item claimed, for example, pain and suffering; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

15.

Attached hereto as Attachment "D" is the defendant's outline of the case which includes a succinct factual summary of all general, special, and affirmative defenses relied upon and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law relied upon as creating a defense shall be listed under a separate heading. For any counterclaim, the defendant shall separately provide the following information for each item of damage claimed: (a) a brief description of the item claimed; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

16.

Attached hereto as Attachment "E" are the facts stipulated by the parties. No further evidence will be required as to the facts contained in the stipulation and the stipulation may be read into evidence at the beginning of the trial or at such other time as is appropriate in the trial of the case. It is the duty of counsel to cooperate fully with each other to identify all undisputed facts. A refusal to do so may result in the imposition of

sanctions upon the non- cooperating counsel.

17.

The legal issues to be tried are as follows:

Plaintiff Freeman:

(1) Whether Defendant Patel can assert and pursue putative cross claims against Defendant (in default) Smith when Defendant Patel failed to properly serve Smith under the Federal Rules of Civil Procedure and failed to file proof or return of service for the Crossclaim.

(2) What reference, if any, to putative crossclaims against Defendant Smith will be allowed at trial against Patel.

(3) What reference, if any, to Defendant Smith's default will be allowed at trial against Patel.

(4) Whether Defendant Patel engaged in the offenses of theft by taking under O.C.G.A. § 16-8-2 and/or theft by receiving stolen property under O.C.G.A. § 16-8-7.

(5) Whether Defendant Patel participated in a pattern of racketeering activity under the Georgia Racketeer Influenced and Corrupt Organizations Act (RICO), in violation of state law,

O.C.G.A. § 16-14-1, *et seq.*

(6) Whether Defendant Patel is liable to Plaintiff for violating the Georgia Racketeer Influenced and Corrupt Organizations Act (RICO), O.C.G.A. § 16-14-4.

(7) Whether Defendant Patel engaged in a civil conspiracy, making him liable as a joint tortfeasor for the full value recoverable on such claim.

(8) Whether Defendant Patel is liable to Plaintiff for all damages, and the amount of such damages, including general damages, compensatory damages, economic damages, consequential damages, punitive damages, and treble damages under Georgia RICO.

(9) If found liable under RICO, the amount of treble damages under O.C.G.A. § 16-14-6(c).

(10) On bifurcation and a predicate jury factual finding, Plaintiff's entitlement to and the measure of punitive damages against Defendant Patel, under O.C.G.A. § 51-12-5.1.

(11) On a jury predicate finding of the standard for award of Plaintiff's fees and litigation costs, the measure of such fees and

litigation costs under O.C.G.A. § 13-6-11 and the Georgia RICO statute.

(12)   Any additional legal issues raised by any affirmative defenses or counterclaims Defendant may assert.

Defendant Patel:

(1) Whether the Defendants, or any of them, committed Theft by Taking (O.C.G.A. § 16-8-2) such that they are liable to Plaintiff for civil theft under O.C.G.A. § 51-10-6;

(2) Whether the Defendants participated in a civil conspiracy with the other Defendants for an unlawful purpose;

(3) Whether Defendants violated Georgia's RICO act; that is whether Defendants committed, attempted to commit, aided and abetted, solicited, or engaged in at least two interrelated predicate incidents or acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that had the same or similar intent, results, accomplices, victims, methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated incidents which proximately caused injury to the Plaintiff;

11

(4) Whether Plaintiff is entitled to recover three times its actual damages sustained and/or punitive damages under Georgia's RICO Act, O.C.G.A. § 16-14-4.

(5) Whether Plaintiff is entitled to recover its reasonable attorneys' fees in the trial and appellate courts (if applicable) and their costs of investigation and litigation reasonably incurred under Georgia's RICO Act, O.C.G.A. § 16-14-6(c).

(6) Whether Defendants' actions show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences, such that Plaintiff is entitled to punitive damages under O.C.G.A. § 51-12-5.1

(7) Whether Defendants have acted in bad faith, been stubbornly litigious, and/or caused Plaintiff unnecessary trouble and expense, such that Plaintiff is entitled to its attorneys' fees, costs, and expenses under O.C.G.A. § 13-6-11.

(8) Whether Plaintiff's claims are barred against Mr. Patel because Plaintiff's alleged loss was proximately caused by Plaintiff, or by

12

Defendant Smith, or by Defendant Smith and Defendant Doe, or by third parties, and not by Mr. Patel.

(9) Whether there is no causal relationship between any of the alleged acts or omissions on the part of Mr. Patel and any injuries or damages alleged by Plaintiff.

(10) Whether some or all of the claims and damages may be impacted by payment and/or the return of materials to Plaintiff.

(11) Whether the injuries and damages alleged in the Complaint, none being admitted, were caused, in whole or in part, by the actions or inactions of non-parties over whom Mr. Patel exercised no control, had no opportunity to anticipate or right to control, and with whom Mr. Patel had no legal relationship by which liability could be attributed to him.

(12) Whether at all times Mr. Patel acted in good faith and had reasonable grounds for believing his actions were not in violation of Georgia law, and whether he did not know or show reckless disregard for whether his conduct was prohibited by Georgia law.

(13) Whether Mr. Patel is entitled to offset of monies or other consideration paid or provided for the planks to Plaintiff's employee, Defendant Smith.

(14) Whether any basis exists for any claim for punitive damages or attorney's fee and expenses of litigation pursuant to O.C.G.A. §§ 13-6-11 or 51-12-5.1, or pursuant to any other theory and, further, imposing punitive damages under the circumstances of this case upon Mr. Patel would violate his rights under the Constitution of the State of Georgia and the United States Constitution. Further, whether in this regard a bona fide dispute exists as to the extent that Mr. Patel is not liable to Plaintiff.

(15) Whether Cross-Defendant committed fraud and deceit such that he is liable to Mr. Patel for compensatory, consequential, and general damages.

(16) Whether Cross-Defendant's actions result in unjust enrichment such that Cross-Defendant is liable to Mr. Patel for damages and/or equitable relief.

(17) Whether Cross-Defendant has acted in bad faith, been stubbornly litigious, and/or caused Mr. Patel unnecessary trouble and

14

expense, such that Mr. Patel is entitled to its attorneys' fees, costs, and expenses under O.C.G.A. § 13-6-11.

(18)   Whether Cross-Defendant's actions show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences, such that Mr. Patel is entitled to punitive damages under O.C.G.A. § 51-12-5.1.

18.

Attached hereto as Attachment "F-1" for the plaintiff, Attachment "F-2" for the defendant, and Attachment "F-3", etc. for all other parties is a list of all the witnesses and their addresses for each party.  The list must designate the witnesses whom the party will have present at trial and those witnesses whom the party may have present at trial.  Expert (any witness who might express an opinion under Rule 702), impeachment and rebuttal witnesses whose use as a witness can be reasonably anticipated must be included. Each party shall also attach to the list a reasonable specific summary of the expected testimony of each expert witness.

All of the other parties may rely upon a representation by a designated party that a witness will be present unless notice to the

15

contrary is given ten (10) days prior to trial to allow the other party(s) to subpoena the witness or to obtain the witness' testimony by other means. Witnesses who are not included on the witness list (including expert, impeachment and rebuttal witnesses whose use should have been reasonably anticipated) will not be permitted to testify, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

19.

Attached hereto as Attachment "G-1" for the plaintiff, "G-2" for the defendant, and "G3", etc. for all other parties are the typed lists of all documentary and physical evidence that will be tendered at trial. Learned treatises which are expected to be used at trial shall not be admitted as exhibits. Counsel are required, however, to identify all such treatises under a separate heading on the party's exhibit list.

Each party's exhibits shall be numbered serially, beginning with 1, and without the inclusion of any alphabetical or numerical subparts. Adequate space must be left on the left margin of each party's exhibit list for court stamping purposes. A courtesy copy of each party's list must be submitted for use by the judge.

16

Prior to trial, counsel shall mark the exhibits as numbered on the attached lists by affixing numbered yellow stickers to plaintiff's exhibits, numbered blue stickers to defendant's exhibits, and numbered white stickers to joint exhibits. When there are multiple plaintiffs or defendants, the surname of the particular plaintiff or defendant shall be shown above the number on the stickers for that party's exhibits.

Specific objections to another party's exhibits must be typed on a separate page and must be attached to the exhibit list of the party against whom the objections are raised. Objections as to authenticity, privilege, competency, and, to the extent possible, relevancy of the exhibits shall be included. Any listed document to which an objection is not raised shall be deemed to have been stipulated as to authenticity by the parties and shall be admitted at trial without further proof of authenticity.

Unless otherwise noted, copies rather than originals of documentary evidence may be used at trial. Documentary or physical exhibits may not be submitted by counsel after filing of the pretrial order, except upon consent of all the parties or permission of the court. Exhibits so admitted must be numbered, inspected by counsel, and marked with stickers prior to trial. Counsel shall familiarize themselves with all exhibits (and the

17

numbering thereof) prior to trial. Counsel will not be afforded time during trial to examine exhibits that are or should have been listed.

20.

The following designated portions of the testimony of the persons listed below may be introduced by deposition:

Response:

30(b)(6) Deposition of Person Most Knowledgeable for the Freeman Manufacturing & Supply Company – John Martin dated October 19, 2023 ("30(b)(6) Deposition").

Any objections to the depositions of the foregoing persons or to any questions or answers in the depositions shall be filed in writing no later than the day the case is first scheduled for trial. Objections not perfected in this manner will be deemed waived or abandoned. All depositions shall be reviewed by counsel and all extraneous and unnecessary matter, including non-essential colloquy of counsel, shall be deleted. Depositions, whether preserved by stenographic means or videotape, shall not go out with the jury.

21.

Attached hereto as Attachments "H-1" for the plaintiff, "H-2" for the

defendant, and "H-3", etc. for other parties, are any trial briefs which counsel may wish to file containing citations to legal authority concerning evidentiary questions and any other legal issues which counsel anticipate will arise during the trial of the case. Limitations, if any, regarding the format and length of trial briefs is a matter of individual practice which shall be established by each judge.

22.

In the event this is a case designated for trial to the court with a jury, requests for charge must be submitted no later than 9:30 a.m. on the date on which the case is calendared (or specially set) for trial. Requests which are not timely filed and which are not otherwise in compliance with LR 51.1, will not be considered. In addition, each party should attach to the requests to charge a short (not more than one (1) page) statement of that party's contentions, covering both claims and defenses, which the court may use in its charge to the jury.

Counsel are directed to refer to the latest edition of the Eleventh Circuit District Judges Association's Pattern Jury Instructions and Devitt and Blackmar's Federal Jury Practice and Instructions in preparing the requests to charge. For those issues not covered by the Pattern

19

Instructions or Devitt and Blackmar, counsel are directed to extract the applicable legal principle (with minimum verbiage) from each cited authority.

23.

If counsel desire for the case to be submitted to the jury in a manner other than upon a general verdict, the form of submission agreed to by all counsel shall be shown in Attachment "I" to this Pretrial Order. If counsel cannot agree on a special form of submission, parties will propose their separate forms for the consideration of the court.

Pursuant to Judge Boulee's Standing Order, paragraph III. s. iv., the parties shall file proposed verdict forms on CM/ECF at least a day prior to the pretrial conference, unless the Court orders otherwise.

24.

Unless otherwise authorized by the court, arguments in all jury cases shall be limited to one-half hour for each side. Should any party desire any additional time for argument, the request should be noted (and explained) herein.

Time sufficient for Plaintiff. If Plaintiff is granted additional time, Defendant Patel requests equal time.

20

25.

If the case is designated for trial to the court without a jury, counsel are directed to submit proposed finding of fact and conclusions of law not later than the opening of trial.

26.

Pursuant to LR 16.3, lead counsel and persons possessing settlement authority to bind the parties met in person on June    , 2025, to discuss in good faith the possibility of settlement of this case. The court has not discussed settlement of this case with counsel.  It appears at this time that there is:

(_____) A good possibility of settlement

(_____) Some possibility of settlement

(__X__) Little possibility of settlement

(_____) No possibility of settlement

27.

Unless otherwise noted, the court will not consider this case for a special setting, and it will be scheduled by the clerk in accordance with the normal practice of the court. The parties request a special setting to be determined at the pre-trial conference.

21

28.

The plaintiff estimates that it will require **two** days to present its evidence. Defendant Patel estimates that it will require **two** days to present its evidence. It is estimated that the total trial time is **four** days.

29.

IT IS HEREBY ORDERED that the above constitutes the pretrial order for the above captioned case (\_\_\_\_) submitted by stipulation of the parties or (\_\_\_) approved by the court after conference with the parties.

IT IS FURTHER ORDERED that the foregoing, including the attachments thereto, constitutes the pretrial order in the above case and that it supersedes the pleadings which are hereby amended to conform hereto and that this pretrial order shall not be amended except by Order of the court to prevent manifest injustice. Any attempt to reserve a right to amend or add to any part of the pretrial order after the pretrial order has been filed shall be invalid and of no effect and shall not be binding upon any party or the court, unless specifically authorized in writing by the court.

IT IS SO ORDERED this _____ day of _____, 2025

_____
J.P. BOULEE
UNITED STATES DISTRICT JUDGE

22

Each of the undersigned counsel for the parties hereby consents to entry of the foregoing pretrial order, which has been prepared in accordance with the form pretrial order adopted by this court.

*/s/ Robert E. Rigrish*                          */s/ RER for George A. Koenig*
                                                 *w/permission*

Counsel for Plaintiff                            Counsel for Defendant/Cross
                                                 -Plaintiff Patel

Attachment A

## <u>JUROR LEGAL QUALIFICATION QUESTIONS</u>

The parties propose only the following legal qualification question in addition to the Civil Qualifying Jury Questions or Civil Background Jury Questionnaire set forth in Judge Boulee's Standing Order Exhibits A and B:

1. Does any juror hold any identity-based belief, racial, religious or otherwise, which discourages or prevents you from deciding this case between these parties on the merits?

Attachment B-1

## **PLAINTIFF'S VOIR DIRE**

Plaintiff proposes the following voir dire to supplement the Court's qualifying questions and background jury questionnaire set forth in Exhibits A and B to Judge Boulee's Standing Order. None of the questions set forth in Exhibits A or B are duplicated here:

1. Have you ever purchased products through Facebook marketplace?

    a. If so, what types of products have you purchased?

2. Have you ever worked with wood materials, including but not limited to selling wood, purchasing wood, or building with wood?

    a. If you have purchased wood, have you ever purchased wood directly from a supplier's warehouse?

3. Have you ever purchased any other materials directly from a supplier warehouse?

4. Have you ever used Venmo?

5. Have you ever worked in a warehouse for a material supplier?

    a. If so, what was your role?

25

Attachment B-2

## **DEFENDANT'S VOIR DIRE**

1. Have you or any member of your family ever started a side business or side gig?

   a. If so, what was the business?

   b. Why was it started?

2. Have you ever used Facebook?

   a. If so, have you ever sent or received a friend request through Facebook?

3. Have you ever used Facebook Marketplace? If so,

   a. Were you a seller?

      i. If so, what did you sell?

      ii. How did you set your prices?

      iii. How did you receive the payment?

   b. Were you a buyer?

      i. If so, what did you buy?

      ii. Did you negotiate the price?

      iii. How did you pay?

   c. Have you ever sent or received a friend request through

Facebook Marketplace?

4. Have you ever used Venmo?

    a. Do you have an opinion on the type of person who uses Venmo?

5. Have you ever done your own repairs or remodeling of your home?

    a. If so, what type of project was it?

    b. Where did you buy the materials for it?

6. Have you ever purchased anything for your home at a discount?

    a. What's the best deal you ever got?

7. Have you ever been involved in an audit?

    a. Can you describe what an audit is?

    b. What kind of audit was it?

    c. How were you involved?

8. Have you ever worked with an inventory management system?

    a. If so, what kind of system was it?

        i. What did you do with it?

        ii. Have you ever worked with a system called XA?

    b. Have you ever done inventory counts?

27

    c. Have you ever been in a situation where there was an inventory shortage?

        i. If so, what did you do about it?

9. Have you ever been involved in a situation where an employee had been stealing from your employer?

    a. If so, what was your involvement?

10. Have you ever been accused of taking something that didn't belong to you?

    a. If so, who accused you?

    b. What did you do about it?

11. Have you studied law or received any training in law?

12. Have you or any member of your family ever been involved in a dispute that led one of the parties to retain a lawyer?

13. Have you or any member of your family ever reported to the authorities or asserted a legal claim against anyone for theft?

14. Do any of you have personal feelings about lawsuits, or the people who file them, that might affect your deliberations in this case?

15. The trial in this case is estimated to be four days. Many witnesses will be called and evidence will be introduced piece by piece. Can you keep an open mind until all the evidence is introduced and you have heard the final instructions of the Court and arguments of counsel?

16. Do any of you know of any reason whatsoever that might inhibit your ability to be fair and impartial to the parties in this case?

17. Does anyone have any other issue or concern that we have not talked about that might make it difficult for you to serve on our jury?

Attachment C

## PLAINTIFF'S OUTLINE OF THE CASE

In the Spring of 2022, Defendant Harikrishna (Hari) Patel, an information technology (IT) professional with a master's degree in business administration, befriended Freeman Manufacturing & Supply, Inc. ("Freeman") warehouse worker Jonathan X. Smith on Facebook. Smith, without authority, was attempting to sell Freeman inventory, through his Facebook page, for cash, out of the loading dock of Freeman's small Tucker, Georgia warehouse space.

Patel, having first visited the Freeman warehouse space, arranged to meet Smith after hours at the warehouse door on April 26, 2022 and paid Smith [not Freeman], via Venmo to Smith's personal account, $180 ($30 each) for six Perfect Plank™ butcher block 'planks.' Patel had rented a Home Depot transit van in Alpharetta at 7:45pm on April 26, 2022, and traveled that evening to Freeman's Tucker location for Smith to load the six planks onto the rental vehicle. Patel returned the van in Alpharetta at 7:58am the next morning. Patel listed the planks for resale on his own Facebook Marketplace site the same day, April 27, 2022. The retail value for Freeman for these PerfectPlanks™ (the damages value under

O.C.G.A. § 51-10-6(f)) was $309.83 per plank. Patel sought, and was paid, $450 for three of the six alder Perfect Plank™ butcher block 'planks' that same day by his buyer, who picked them up that evening at Patel's home garage. As a result, Patel made $120 on each plank he paid Smith $30 for, and which Freeman could have sold for $309.83. Patel rejected a lower offer by the buyer, claiming (falsely) that the planks were in high demand" and "half of them are sold or booked."

Thereafter, from May until October, 2022, Patel, through Facebook, text messages, or calls, arranged on multiple occasions to meet Smith at the Freeman warehouse loading dock, in the evening or on weekends, where Smith met Patel and loaded Perfect Plank™ 'planks' (96" x 18" butcher block, of various grades and thicknesses) and pallets of high-grade plywood onto Patel's Home Depot rental trucks or vans. Patel paid Smith cash or via Venmo transfers for the inventory, knowingly paying Smith far less than the inventory was worth, then sold the Freeman inventory to third parties at a profit as a "side hustle."

The scheme ended in October, 2022 when a Freeman employee chanced upon Patel's Facebook Marketplace website and found for sale Perfect Plank™, a product for which Freeman was the exclusive east

31

coast distributor; noted that Patel identified Freeman employee Smith as a 'friend' on Patel's Facebook Marketplace site, and confirmed that Patel had not bought the inventory from Freeman. When Patel learned that Smith had been caught, Patel deleted his Facebook Marketplace history showing his sales of Freeman's product. All told, as a result of the scheme, Freeman lost $194,888.19 of inventory, as measured for damages under O.C.G.A. § 51-10-6(f).

**Relevant Statutes and Illustrative Case Law:**

Civil Theft Tort Claim: O.C.G.A. § 51-10-6(a); O.C.G.A. §§ 16-8-2 (theft by taking) or § 16-8-7 (receipt of stolen goods); Martin v. State, 300 Ga. App. 39 (2009); Middleton v. State, 309 Ga. 337, 344-47 (2020).

Civil Conspiracy:   Metro Atlanta Task Force v. Ichthus Community Trust, 298 Ga. 221, 224-25 (Ga. 2015)(making Patel liable as joint tortfeasor); Hansford,etc. [no apportionment]

Georgia RICO: O.C.G.A. § 16-14-1 et seq.; pattern and civil thefts as predicate acts, O.C.G.A. § 16-14-3(3),(4), (5)(A)(xii); Hansford v. Veal, 369 Ga. App. 641, 648 (2023); see also WK v. Red Roof Inns, Inc., 692 F.Supp.3d 1366,1380 (N.D. Ga. 2023)(citing Dorsey v. State, 279 Ga. 534, 540 (2005); Patterson v. Proctor, 237 Ga. App. 244 (1999).

**<u>Damages:</u>**

<u>Special Damages.</u> (retail value of inventory stolen): $194,888.19, full value recoverable from Patel on civil conspiracy and RICO claims. O.C.G.A. § 51-10-6(f); <u>Metro Atlanta Task Force</u>, 298 Ga. at 224-25; <u>Faillace v. Columbus B&T Co</u>., 269 Ga. App. 866 (2004).

<u>Treble Damages.</u> ($584,664.57, inclusive of special damages). O.C.G.A. § 16-14-6(c).

<u>Attorneys Fees and Costs</u>. $235,000 and accruing. O.C.G.A. § 13-6-11, O.C.G.A. § 16-14-6(c), O.C.G.A. § 51-10-6(b).

<u>Punitive Damages</u>. In an amount determined by the enlightened conscience of the jury. O.C.G.A. § 51-12-5.1, O.C.G.A. § 16-14-6(c); <u>Reid v. Morris</u>, 309 Ga. 230 (2020).

Attachment D

## DEFENDANT'S OUTLINE OF THE CASE

Plaintiff's employee (Defendant Smith) stole lumber from Plaintiff' and sold it to numerous unsuspecting people.  Plaintiff and Mr. Patel were both duped by Plaintiff's employee.  Plaintiff gave Defendant Smith access and control of Plaintiff's inventory system, Plaintiff's warehouse facility and the materials stored there. Using this access, he stole the materials and advertised them for sale through Facebook Marketplace. Smith told Mr. Patel that he was the owner of the warehouse, that the materials were being sold at a discount because they were returns or defective, and that he was unable to sell them at retail prices.  Smith never told Mr. Patel that he was selling stolen materials.

Mr. Patel is a full-time information technology (IT) solution designer. In April 2022 he wanted to build a bookshelf for his family and found wood planks for the project on the Facebook Marketplace webpage of Jonathan Smith. Mr. Patel did not know Smith when he first came across this advertisement. Mr. Patel made an inquiry about Smith's advertisement followed by a visit to Smith's place of business in April 2022. Smith greeted Mr. Patel and invited him inside via the front door.

34

Smith introduced himself as the owner of the business and explained that he was selling returns at discounted prices. Mr. Patel paid Smith for the planks. Thereafter, Mr. Patel rented a vehicle and returned to personally pick up the planks.

Mr. Patel saw an opportunity to develop a side business to buy and re-sell at a profit the discount-priced planks that Smith was advertising for sale. From April 2022 through sometime in October 2022 Mr. Patel made periodic purchases of planks as well as plywood from Smith, but he was not the only one to whom Smith was selling planks. Smith told Mr. Patel that he was the owner of Plaintiff and that he was not selling the planks and plywood at retail prices because they were damaged or returns.

Mr. Patel rented a truck for each delivery. Mr. Patel did not know there was any issue with Smith, Smith's ownership of the planks and plywood or Smith's sale of them until he learned of a police investigation (through legal counsel) of Defendant Smith in October 2022.  Mr. Patel hired legal counsel, initiated an investigation of this new information, and, based on his findings, delivered to Plaintiff the unprocessed lumber materials in his possession that he had purchased from Smith.

Plaintiff has a state-of-the-art and secure inventory system called XA to track its supply chain and inventory and uses this system in conjunction with picking slips that have internal information on it for Freeman only to fill orders.   Smith had access to the XA system, as well as the authority to generate order tickets for sales. When materials arrived at the facility Smith did all of the unloading, the counting, and the receipt" and he signed for all the material on all of our Plaintiff's shipments. In addition, Smith helped with counts during physical inventories and would have been one of only two employees ultimately responsible for an inventory shortage. Smith also had the keys to lock and unlock Plaintiff's facility.

Plaintiff monitored its inventory on a day-to-day basis to see if its inventory on the sheet matches what's on the floor.  Plaintiff does a full-scale inventory once a year on October 1.  Plaintiff found out in July 2022 that inventory was missing, but did nothing. Plaintiff's Tucker facility is not a retail store, but an industrial storefront. It does not have surveillance, cameras or an alarm system.

Smith accomplished his theft of the planks and plywood though his access to the XA system and Plaintiff's facility. The XA system showed

him the quantities and dates for deliveries of planks and plywood to the facility and he signed for and unloaded all the planks and plywood delivered to there.  Using this information and his control of Plaintiff's facility, Smith stole wood materials for at least six months and covered his tracks by misleading Plaintiff during inventory counts. Smith was good at this, so good in fact that when Plaintiff first discovered inventory shortfalls in July 2022 they did not suspect Smith was responsible, It was not until October 19, 2022 when he tried to create a fake purchase order that he was caught. At that time Plaintiff observed "John Doe" with some of Plaintiff's material loaded into his truck, but he was not aware of anything being wrong until he asked Smith for the paperwork for the sale of the materials. When Smith could not produce paperwork, Plaintiff became suspicious.

Mr. Patel was not involved with: (i) Smith's use of Plaintiff's "powerful" XA supply chain and inventory management system with his employee credentials; (ii) Smith's identification of which planks and plywood recorded in this system that he would appropriate to his scheme; (iii) Smith's constructive or other possession and control of these planks and plywood thereafter through his active management of Plaintiff's

37

inventory and facility, and his deceptive responses to Plaintiff's inquiries about shortfalls; (iv) Smith's advertisement of the stolen planks and plywood for sale to the public, including their content and timing and list prices; and (v) the place, time, and terms of delivery of the planks and plywood to himself.

Mr. Patel did not at any time prior to being contacted by the police in October 2022 learn that Smith had been stealing planks and plywood. According to Mr. Smith, Mr. Patel wouldn't know that the planks and plywood were stolen and Smith never told him they were stolen.

Smith's public Venmo page — revealed Smith sold planks and plywood to other customers, with several of these other customers making multiple purchases. Plaintiff suspected that other people purchased planks and plywood from Smith but has done nothing further to investigate and quantify how much wood was purchased by others.

The police investigated Smith's scheme and arrested Smith but did not pursue criminal action against Mr. Patel (or to his knowledge any of the other customers). After the police contacted Mr. Patel in October 2022, Mr. Patel hired Ahmad Crews as his attorney and cooperated with the police during their investigation. He also returned to Plaintiff

unprocessed lumber materials in his possession and that he had purchased from Smith.

In the Complaint Plaintiff claimed that a "white van" had a license plate that belonged to Mr. Patel, but was being driven by "John Doe" when "John Doe" and Smith loaded a pallet of materials into the van. However, Plaintiff now admits that it never had any evidence that the van or the license on the van had any connection with Mr. Patel, or that the materials that "John Doe" loaded into his van were any of the planks or plywood that Mr. Patel purchased and had possession of. Plaintiff also has not produced any evidence that Mr. Patel had any connection with Smith's sales of materials to "John Doe" or his other customers.

**Relevant Statutes and Illustrative Case Law:**

**Claims:**

Civil Theft Tort Claim: O.C.G.A. § 51-10-6(a); O.C.G.A. §§ 16-8-2; O.C.G.A. § 44-1-7 ("Personalty is deemed to be in the possession of a party when that party's right to the property is accompanied by immediate actual or constructive possession"); *Amaechi v. State,* 306 Ga. App. 333, 337 (2010); *United States v. Miller*, 738 Fed. Appx. 661, 664, 665 (11th

Cir. 2018); *De Foor v. State*, 233 Ga. 190, 192 (1974); *United States v. Baldwin*, 774 F.3d 711, 722-723 (11th Cir. 2014).

Civil Conspiracy: *Elliott v. Savannah Int'l Motors, Inc.*, 360 Ga. App. 281, 285-286 (2021).

Georgia RICO: O.C.G.A. § 16-14-3(5)(A)(xii); *Roth v. Connor*, 235 Ga. App. 866, 872 (1998)

**Damages**:

Special Damages: *Holland v. Holland Heating & Air Conditioning*, 432 S.E.2d 238, 241 (Ga. App. 1993) (evidence failed to provide a sufficient basis to allow a reasonable calculation of damage caused by the alleged tort); *Hixson-Hopkins Autoplex v. Custom Coaches*, 432 S.E.2d 224, 225 (Ga. App. 1993) (the losses must be directly traceable to the acts of the other party).

Treble Damages: O.C.G.A. § 16-14-6(c); unrecoverable, *Byrne v. Nezhat*, 261 F.3d 1075 (11th Cir. 2001); *Sparra v. Deutsche Bank National Trust Co.*, 785 S.E.2d 78 (Ga. App. 2016).

Attorney's Fees and Costs: O.C.G.A. § 13-6-11; unrecoverable, *Kalpakchian v. Bank of Am. Corp.*, 2019 U.S. Dist. LEXIS 238603, *16

(N.D. Ga. 2019); *Davis v. Johnson*, 280 Ga. App. 318, 634 S.E.2d 108, 110 (2006).

Punitive Damages: O.C.G.A. § 51-12-5.1, O.C.G.A. § 16-14-6(c); unrecoverable, *Byrne v. Nezhat*, 261 F.3d 1075 (11th Cir. 2001); *Sparra v. Deutsche Bank National Trust Co.*, 785 S.E.2d 78 (Ga. App. 2016).

**Affirmative Defenses**:

Payment/Return of materials: O.C.G.A. § 9-2-7 ("Ordinarily, when one renders service or transfers property which is valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof.")

**Cross-Claims**:

Fraud and Deceit: O.C.G.A. § 51-6-2; *Bassett v. Jasper Banking Co.*, 629 S.E.2d 434 (Ga. App. 2006).

Unjust Enrichment: *Sitterli v. Csachi*, 811 S.E.2d 454 (Ga. App. 2018) (elements).

**Damages**:

Special Damages: Money paid for the returned materials *S. Cellular Telecom v. Banks*, 431 S.E.2d 115 (Ga. App. 1993) (the measure of damages in action for fraud and deceit is the actual loss sustained).

41

Benefit Conferred: Money paid for the returned materials. *Zampatti v. Tradebank Int'l Franchising Corp.*, 508 S.E.2d 750 (Ga. App. 1998).

Attorney's Fees and Costs: Continuing to accrue; O.C.G.A. § 13-6-11; *Evans Toyota v. Cronic*, 503 S.E.2d 358 (Ga. App. 1998).

Punitive Damages: In an amount determined by the enlightened conscience of the jury. O.C.G.A. § 51-12-5.1; *Golden Atlanta Site Dev., Inc. v. R. Nahai & Sons, Inc.*, 683 S.E.2d 627 (Ga. App. 2009) (fraud and deceit); *Norton v. Holcomb*, 682 S.E.2d 336 (Ga. App. 2009)

43

Attachment E

## FACTS STIPULATED BY THE PARTIES

The parties' counsel are conferring and if agreement is reached,

this Attachment may be supplemented.

Attachment F-1

## PLAINTIFF'S WITNESS LIST

Plaintiff <u>will</u> call:

Matt Turco, c/o Plaintiff's counsel

Jason Parish, c/o Plaintiff's counsel

John Martin, c/o Plaintiff's counsel

Plaintiff <u>may</u> call:

| WITNESS NAME | WITNESS ADDRESS |
|---|---|
| ARGALAS, MELISSA | 1121 GREENBRIAR CIR, DECATUR, GA 30033-4406 |
| ARRINGTON, DEVONNA | 4986 GALBRAITH CIR APT E3, STONE MOUNTAIN, GA 30088-1726 |
| BRUMBELOW-MCDONALD, ALLISON | 7505 NICHOLSON RD, CUMMING, GA 30028-3042 |
| BURNS, JESSE | 130 EDGEWOOD DR, METCALF, GA 31792-4507 |
| CANN, Drayton or Amy | 425 SADDLEBROOK DR, ROSWELL, GA 30075-2447 |
| CANN, MIKE | 5341 LASSITER DR, STONE MOUNTAIN, GA |
| CARGAL, SAMUAL | 4149 LAKESHORE WAY NE, MARIETTA, GA 30067-4123 |
| CONN, DAN | 301 RIDGEVIEW TRACE, CANTON, GA 30114-7001 |
| DOWNTON, EVAN | 7525 WYNFIELD DR, CUMMING, GA 30040-5666 |
| GOSS, HEIDI | 8610 GILMER FT, BALL GROUND, GA 30107-5312 |
| GUIE, JUAN R. | 5215 SCENIC VALLEY DR, CUMMING, GA 30040-5480 |
| HASKINS, AUDRA | 7210 WESTRAY RD, CUMMING, GA 30028 |

44

| | |
|---|---|
| HUDES, BRIAN | 1811 KELLY MILL RD, CUMMING, GA 30040-5121 |
| JOHNSON, THOR | 1086 REALM LN, LAWRENCEVILLE, GA 30044-2676 |
| KAMBER, MIKE | 845 FREEHOME RD, CANTON, GA 30115-4821 |
| KOUNTZ, PAUL | 3197 TOWERVIEW DR NE, ATLANTA, GA 30324-2550 |
| MARLOW, RACHEL | 377 AMY LANE, CANTON, GA 30115-6899 |
| PAGE, JOSHUA | 1214 HIDDEN CIRCLE DR # GA, SUGAR HILL, GA 30518-4738 |
| PATEL, ARYAN H. | 6680 YELLOW BIRCH STREET, CUMMING GA 30040 |
| PATEL, EKTA H. | 6680 YELLOW BIRCH STREET, CUMMING GA 30040 |
| PATEL, HARI | 6680 YELLOW BIRCH STREET, CUMMING GA 30040 |
| RIZK, TANYA | 202 DOVER CT, WOODSTOCK, GA 30188-6341 |
| SELLECK, SCOTT K. | 494 WATKINS FARM RD, NICHOLSON, GA 30565-2528 |
| SMITH, JONATHAN X | 4715 OLD HIGHGATE ENTRY, STONE MOUNTAIN, GA 30083-2663 |
| SUMMERVILLE, MATT | 5574 TRACE VIEWS DR, NORCROSS, GA 30071-1436 |
| TASKER. RILEY | 234 N FOREST AVE NE, MARIETTA, GA 30060-1624 |
| TERELL, ANDRA | 4922 MARLOS DR NE, MARIETTA, GA 30066-6918 |
| THOMAS, CHRIS | 1131 CARLAN ROAD JASPER GA 30143 |
| VIAU, ELIZABETH | 6120 CARDINAL DR, GAINESVILLE, GA 30506 |
| WATTS, HOPE | 1955 CALDER CT, DUNWOODY, GA 30338-3031 |
| ZAPATA, DANIEL | 7183 WILLIAMS RD, FLOWERY BRANCH, GA 30542-5550 |

Attachment F-2

## <u>DEFENDANT'S WITNESS LIST</u>

Witnesses who <u>will</u> be present at trial:

Hari Patel c/o counsel

Witnesses who <u>may</u> be present at trial:

Fabiola Appolon, 2285 ANAMANDA CLOSE, NORCROSS, GA 30071-3472

John Craig, 6710 Yellow Birch Street, Cumming, GA 30040

Ahmad Crews c/o counsel

Ekta Patel c/o counsel

Melissa Graham, 1307 FALLSBROOK TER NW, ACWORTH, GA 30101-7838

Brian Hudes, 1811 Kelly Mill Rd, Cumming, GA 30030-5121

Detective Tia Johnson, Dekalb County Police Department, Tucker Precinct, 4451 Lawrenceville Highway, Tucker, GA 30084

Eddie Khalili, 1299 LAVISTA RD NE, ATLANTA, GA 30324-3831

George Klein c/o counsel for Plaintiff

John Martin c/o counsel for Plaintiff

Erica Oliveira, 78 FLORA AVE NE, ATLANTA, GA 30307-2712

Jason Parrish c/o counsel for Plaintiff

Mario Resendiz, 2655 GLENDALE DR NE, CONYERS, GA 30013-1454

Leonard Sage c/o counsel for Plaintiff

Jonathan X. Smith, 4715 OLD HIGHGATE ENTRY, STONE MOUNTAIN, GA 30083-2663

Anton Tkabladze, 2915 ASPEN WOODS ENTRY, ATLANTA, GA 30360-2766

Noe Trejo, 3003 DEVON CT, ROCKY FACE, GA 30740-9532

Leigh Yanes, 5525 CROSS GATE CT NW, ATLANTA, GA 30327-4810

Zoe Newton, 3382 STANTON RD SE, CONYERS, GA 30094-2842

## Attachment G-1

### Plaintiff's Exhibits

|  | Pl. Ex. No. | Description |
|---|---|---|
|  | 1 | Photos of Freeman Tucker warehouse, front and rear loading dock   Patel Dep Ex. 51 |
|  | 2 | Freeman Mfg. & Supply, Inc. website (see Patel Dep. Ex. 53) |
|  | 3 | Perfect Plank website page(s) Patel Dep. Ex. 52 |
|  | 4 | Freeman Smith resume and hire announcement; criminal background check [Freeman 34-36, 39, 48, 49] |
|  | 5 | Image of Jonathan X. Smith from FB [Patel342/Patel Dep. 52; with Patel Dep. Ex. 56 p. 3] |
|  | 6 | Monthly Calendar, April-October 2022 |
|  | 7 | Purchase from Smith and sale to Marlows: P231, 173, 176, 175, 174; P320 |
|  | 8 | John Olson sale: P99, 102, 101,100 |
|  | 9 | Second Patel purchase from Smith: P341, P232 <br> P212, 214-221 |
|  | 10 | Paul Kountz sale P166 167, 165 |
|  | 11 | Patel May inventory restock from Smith: P233 P341; P319, 318, 316 |
|  | 12 | Elizabeth Viau,  P62, 66,65,64,63, Mike Bauer sales, P156, 155, 154 |
|  | 13 | Marinich, Cargal, Downton sales P320,321, 322 |
|  | 14 | TJ, Michael, Bruce  Patel July FB Reviews |
|  | 15 | Tanja Rizk sale P196, 199, 198, 197 |
|  | 16 | Riley Tasker sale P177-189, 323 |
|  | 17 | Mike Cann sale P147, 151, 150, 149, 148 |

48

| | 18 | Patel August purchases from Smith P340; P234, 235; P303, 300-284 (in reverse order) |
|---|---|---|
| | 19 | Paulo Freitas sale  P158; 160, 159 |
| | 20 | Matt Summerville sale P129; 132, 131, 130 |
| | 21 | Brian Hudes sales, P24, 27, 26, 25; 324, 326 |
| | 22 | Hugo Sanchez sale P77, 79, 78 |
| | 23 | Heidi Goss P325 |
| | 24 | Jesse James Burns sale P81, 84,83, 82 |
| | 25 | Thomas Brown sale P201, 204, 203, 202 |
| | 26 | Patel September-October purchases from Smith P340, 339, P236,237, 238, 239  285, and clear invoice of P285; P274; P283-245 (reverse order) |
| | 27 | Scott Selleck sale P191, 194, 193, 192 |
| | 28 | Allison Brumbelow sale P2,6,5,4,3, 339 |
| | 29 | Devonna Arrington sales, P47, 60, 59, 58, 57, 56, 55, 54, 53, 52, 51; 091722 Patel FB review |
| | 30 | Michael, Melissa Argalas sales P330, 331 |
| | 31 | Amy/Drayton Cann sale P8, 12,11, 10, 9, 332, 092322 Patel FB Review |
| | 32 | Audra/Mark Haskins sale, P20, 23, 22, 21, 333 |
| | 33 | Martin Perry sale, P127-122 |
| | 34 | Andra Terrell sale P334 |
| | 35 | Juan R. Guie sale P106, 108, 107 |
| | 36 | Thor Johnson sale, P208, 211, 210, 209 |
| | 37 | Megan Clemmons, Hope Watts sales: P68, 71, 70, 69;  P137, 136, 135, Patel FB Reviews 29, 30 Sept 2022 |
| | 38 | Daniel Zapata sale: P42, 45, 44, 43; Patel FB Review 2 October 2022. |

| | 39 | Sales and Reviews: Melissa McDowell, Drew, Chris Thomas, Kevin Porter, David P335; P28-31; P109-119; Patel FB Reviews 3, 4, 8 Oct 2022. |
| --- | --- | --- |
| | 40 | Dan Conn sale: P35, 38, 37, 36, 337 |
| | 41 | Mike Kamber sales: P141, 145, 144, 143, 142; 336 |
| | 42 | Patel-Smith texts P258-244 (reverse order) |
| | 43 | Freeman 24 [email] and Patel FB 101722 [plywood] |
| | 44 | Patel FB Marketplace ad 101722 |
| | 45 | P89, 93, 94 Martin inquiry |
| | 46 | Inventory Loss Report with retail value [See Martin Dep. Ex. 7, D.E. 39-1) |
| | 47 | Khalili demand letter |
| | 48 | Resendiz demand letter |
| | Not Offered | F.R.E. Rule 107 Illustrative Aids [sample products, enlarged versions of Pl. Exhibits, projected website pages [Pl. Exhibits 2, 3] |


### Defendant Patel's Objections

- Defendant Patel objects to exhibits being listed that have not been produced in discovery. Once Defendant Patel receives the documents, he will determine if his objection can be withdrawn.

| Ex. No. | Description | Objection |
| --- | --- | --- |
| 6. | Monthly Calendar, April-October 2022 | Defendant Patel does not believe he has received this in Discovery because no Bates Nos. were identified. Therefore, Defendant is unsure of its authenticity. |

| 14. | TJ, Michael, Bruce Patel July FB Reviews | Defendant Patel does not believe he has received this in Discovery because no Bates Nos. were identified. Therefore, Defendant is unsure of its authenticity. |
|---|---|---|
| 29. | 091722 Patel FB review | Defendant Patel does not believe he has received this in Discovery because no Bates Nos. were identified. Therefore, Defendant is unsure of its authenticity |
| 31. | 092322 Patel FB Review | Defendant Patel does not believe he has received this in Discovery because no Bates Nos. were identified. Therefore, Defendant is unsure of its authenticity |
| 37. | Patel FB Reviews 29, 30 Sept 2022 | Defendant Patel does not believe he has received this in Discovery because no Bates Nos. were identified. Therefore, Defendant is unsure of its authenticity |
| 38. | Patel FB Review 2 October 2022. | Defendant Patel does not believe he has received this in Discovery because no Bates Nos. were identified. Therefore, Defendant is unsure of its authenticity |
| 39. | Patel FB Reviews 3, 4, 8 Oct 2022. | Defendant Patel does not believe he has received this in Discovery because no Bates Nos. were identified. Therefore, Defendant is unsure of its authenticity |
| 44. | Patel FB Marketplace ad 101722 | Defendant Patel does not believe he has received this in Discovery because no Bates Nos. were identified. Therefore, Defendant is unsure of its authenticity |
| 47. | Khalili demand letter | Defendant Patel does not believe he has received this in Discovery because no Bates Nos. were identified. Therefore, Defendant is unsure of its authenticity |
| 48. | Resendiz demand letter | Defendant Patel does not believe he has received this in Discovery because no Bates Nos. were identified. Therefore, Defendant is unsure of its authenticity |

52

| Not offered | F.R.E. Rule 107 Illustrative Aids [sample products, enlarged versions of Pl. Exhibits, projected website pages [Pl. Exhibits 2, 3] | Defendant reserves the right to object to these when he has an opportunity to review. |
|---|---|---|

Attachment G-2

## DEFENDANT PATEL 'S TRIAL EXHIBITS

**PATEL PRODUCTION**

| | NO. | DESCRIPTION | PATEL BATES NO. | OBJECTION, IF ANY |
|---|---|---|---|---|
| | 1 | Facebook Messages and Photos -- with customers and potential customers (Bates Nos. Patel 1-230) | 1-230 | |
| | | Allison | 1-6 | |
| | | Amy | 7-12 | |
| | | Anish | 13-18 | |
| | | Audra | 19-23 | |
| | | Brian | 24-27 | |
| | | Chris | 28-31 | |
| | | Dan | 32-38 | |
| | | Daniel | 39-45 | |
| | | Devonna | 46-60 | |
| | | Elizabeth | 61-66 | |
| | | Hope | 67-71 | |
| | | Hope | 72-76 | |
| | | Hugo | 77-79 | |
| | | Jesse | 80-84 | |
| | | John | 85-91 | |
| | | John | 92-95 | |
| | | John | 96-102 | |
| | | Juan | 103-108 | |
| | | Kevin | 109-119 | |
| | | Martin | 120-127 | |
| | | Matt | 128-132 | |
| | | Megan | 133-137 | |
| | | Mike | 138-145 | |
| | | Mike | 146-151 | |
| | | Mike | 152-156 | |

| | | Paulo | 157-160 | |
|---|---|---|---|---|
| | | Paul | 161-171 | |
| | | Rachel | 172-176 | |
| | | Riley | 177-189 | |
| | | Scott | 190-194 | |
| | | Tanya | 195-199 | |
| | | Thomas | 200-204 | |
| | | Thor | 205-211 | |
| | | Hari Patel – Face Book Ad – 1 | 212-224 | |
| | | Hari Patel – Face Book Ad – 2 | 225-230 | |
| | 2 | Receipts from Home Depot (Bates Nos. Patel 231-239) | 231-239 | |
| | 3 | Recording of Conversation with Defendant Smith and Ahmad Crews and Transcript (Bates Nos. Patel 240-243) | 240-243 | |
| | 4 | Text Messages with Defendant Smith (Bates Nos. Patel 244-319) | 244-319 | |
| | 5 | Transactions between Hari Patel and his customers_venmo_cash app | 320-338 | |
| | 6 | Transactions between Hari Patel and Jonathan Smith | 339-341 | |
| | 7 | Transactions between Jonathan Smith and other Customers - public in Venmo | 342-343 | |
| | 8 | Transaction with Joshua Page | 344-346 | |
| | 9 | Baseboard Receipts | 347-348 | |
| | 10 | 2022 Tax Return - Hari Patel_ final_Redacted | 349-386 | |

54

| | 11 | Verizon bills | 387-476 | |
|---|---|---|---|---|
| | | Verizon bill – May, 2022 | 387-397 | |
| | | Verizon bill – June, 2022 | 398-407 | |
| | | Verizon bill – July, 2022 | 408-417 | |
| | | Verizon bill – August, 2022 | 418-427 | |
| | | Verizon bill – September, 2022 | 428-437 | |
| | | Verizon bill – October, 2022 | 438-447 | |
| | | Verizon bill – November, 2022 | 448-459 | |
| | | Verizon bill – December, 2022 | 460-469 | |
| | | Verizon bill – January, 2023 | 470-476 | |
| | 12 | 2022 Personal Tax Return - Amended | 477-495 | |
| | 13 | Sales Tax June 2023 | 496-497 | |
| | 14 | Sales Tax 2023 Payment | 498 | |

## DEKALB COUNTY POLICE DEPARTMENT PRODUCTION

| | NO. | DESCRIPTION | | OBJECTION, IF ANY |
|---|---|---|---|---|
| | 15 | Court Supplemental 22-088032 | | |
| | 16 | Defendant-Jonathan Smith 2nd MR 22-088032 | | |
| | 17 | Defendant-Jonathan Smith Documents 22-088032 | | |
| | 18 | Facebook Market Place Listing 22-088032 | | |
| | 19 | Hari Patel Attorney Email 22-088032 | | |
| | 20 | Victim Emails 22-088032 | | |

| | NO. | DESCRIPTION | | |
|---|---|---|---|---|
| | 21 | Jonathan Smith 10-27 22-088032 | recording | |
| | 22 | Jonathan Smith 22-088032 (2) | recording | |
| | 23 | Jonathan Smith Cont'd 22-08832 (4) | recording | |
| | 24 | Jonathan Smith Cont'd 22-088032 (2) | recording | |

## FREEMAN PRODUCTION

| | NO. | DESCRIPTION | FREEMAN BATES NO. | OBJECTION, IF ANY |
|---|---|---|---|---|
| | 25 | Damages Summary | | |
| | 26 | FREEMAN0016--FREEMAN0028 | 16-28 | |
| | | Email exchange freemansupply | 16-18 | |
| | | Inventory | 19 | |
| | | Speqtrum Order & pickup | 20-22 | |
| | | Email – new Jonathan update | 23-24 | |
| | | Email Urgent | 25 | |
| | | Email re Return from Patel | 26-27 | |
| | | Pricing List | 28 | |
| | | Hiring Documents of Jonathan X Smith | 29-82 | |
| | 27 | Patel FB ad 101722 posted 2 days earlier | | |
| | 28 | Patel FB Butcher Block 100122 | | |
| | 29 | Patel FB Friends listing of Jonathan Smith 101722 | | |

56

| | 30 | Patel FB Marketplace 10 moisture gauge 101722 | | |
|---|---|---|---|---|
| | 31 | Patel FB Marketplace 12 101722 | | |
| | 32 | Patel FB Marketplace lumber 2 Oct 17 | | |
| | 33 | Patel FB Marketplace lumber 3 101722 | | |
| | 34 | Patel FB Marketplace lumber 4 101722 | | |
| | 35 | Patel FB Marketplace lumber 5 101722 | | |
| | 36 | Patel FB Marketplace lumber 6 101722 | | |
| | 37 | Patel FB Marketplace lumber 7 101722 | | |
| | 38 | Patel FB Marketplace lumber 9 101722 | | |
| | 39 | Patel FB Marketplace plank 1 101722 | | |
| | 40 | Patel FB Marketplace plank 2 101722 | | |

| | 41 | DEPOSITION Transcript – Hari Patel | | |
|---|---|---|---|---|
| | 42 | DEPOSITION Transcript – 30b6 | | |
| | 43 | Certified Copy of Conviction – Jonathan Smith | | |
| | | Illustrative Aides – To Be Determined | | |

Attachment H-1

## **PLAINTIFF'S TRIAL BRIEF**

Plaintiff anticipates filing a Motion in Limine on three issues. First, Plaintiff will request that the Court prohibit Defendants from referencing the lack of criminal charges against Defendant Patel, as it is irrelevant to this case. *See, e.g., Hansford v. Veal*, 369 Ga. App. 641, 657–59 (2023) (explaining that evidence as to whether a defendant was or was not prosecuted or that a codefendant was the only one prosecuted is "irrelevant and not probative"); O.C.G.A. § 51-10-6(e). Second, Plaintiff will request that the Court prohibit Defendant Patel from introducing testimony as to Defendant Smith's out-of-court statements, as the statements do not qualify under the coconspirator statement hearsay exception. *See, e.g.,* Fed. R. Evid. R. 801(d)(2)(E) (statement must have been made "during and in furtherance of the conspiracy"). Third, Plaintiff will argue that the Court should prohibit Defendant Patel from arguing his Crossclaim against Defendant Smith, as it was never properly served or litigated. Patel filed his Answer and Crossclaim on April 18, 2023. (Doc. 7). However, he did not serve Smith as required by Rule 5(a)(2), which states that "a pleading that asserts a new claim for relief against

58

such a party must be served on that party *under Rule 4*," (emphasis added), nor did he file proof or return of service. The Court should therefore preclude Defendant Patel from arguing the Crossclaim or, at minimum, preclude him from pursuing such claims.

In addition to arguments set forth in earlier briefs, Plaintiff anticipates an argument related to Patel's liability for all stolen inventory, not just the value of what he admits to receiving. Based on his status as a joint tortfeasor and coconspirator, he is liable for all damages. *See Metro Atlanta Task Force v. Ichthus Community Trust*, 298 Ga. 221, 224–25 (Ga. 2015) (explaining that where a cause of action for conspiracy is alleged, "the fact of conspiracy, if proved, makes any actionable deed by one of the conspirators chargeable to all"). Damages should not be apportioned. "Under Georgia law, the apportionment statute does not abrogate the common law of joint and several liability when tortfeasors engage in concerted action or a civil conspiracy." *W.K v. Red Roof Inns, Inc.*, No. 1:20-cv-05263-VMC, 2024 WL 2892322, at *2 (N.D. Ga. June 10, 2024)(citing *FDIC v. Loudermilk*, 826 S.E.2d 116, 129 (Ga. 2019)). Further, "the Georgia Court of Appeals has held that damages recovered from a Georgia civil RICO claim are joint and several, not subject to

apportionment under O.C.G.A. § 51-12-33(b)." *Id.* at \*3 (citing *Hansford v. Veal*, 894 S.E.2d 215, 229 (Ga. App. 2023).

Another issue that may arise at trial specifically relates to the issue of the defaulting Defendant, Mr. Smith, and how much, if any, information regarding the defaulting defendant, including the facts surrounding his default, may be admissible or relevant.

Finally, Plaintiff's summary exhibit showing damages alleged is admissible under Federal Rule of Evidence 1006, providing that the Court "may admit as evidence a summary, chart, or calculation offered to prove the content of voluminous admissible writings, recordings, or photographs that cannot be conveniently examined in court, whether or not they have been introduced into evidence."

Attachment H-2

## **DEFENDANT'S TRIAL BRIEF**

Defendant anticipates filing a Motion in Limine on several issues. First, evidence and argument of theft by receiving should be excluded. *Marriott v. State*, 320 Ga. App. 58, 63 (2013) (theft by taking and theft by receiving are mutually exclusive). Theft by receiving/receipt of stolen goods, O.C.G.A. § 16-8-7, is not in the case for any purpose because the claim was not stated in the Complaint. [D.I. 1]. Plaintiff sought to amend the Complaint to add the claim to the Theft claim, *cf.* Cplt., ¶¶ 44, 47 [D.I. 1] *with* attempted FAC, ¶¶ 40, 43 [D.I. 43-1], and the RICO claim, *cf.* Cplt., ¶ 62 [D.I. 1] *with* attempted FAC, ¶¶ 56, 57 [D.I. 43-1]. The Court denied the motion. [D.I. 44 at n. 2].

Second, Plaintiff's witness Matt Turco (will call) should be excluded from testifying because Plaintiff did not identify him during discovery as a person with knowledge of the allegations of the Complaint, *see* Plaintiff's Objections and Responses to Defendant Patel's First Interrogatories dated September 12, 2023, Int. No. 1, as a designated representative on any issues set forth for Plaintiff's 30(b)(6) deposition, *see* Notice of Deposition of the Freeman Manufacturing & Supply

Company, Subjects for Deposition [D.I. 16] and 30(b)(6) Deposition (showing John Martin as the sole designee on all issues), or otherwise. In addition, witnesses identified as may call on Plaintiff's Witness List Attachment F-1 who have not previously been identified should be excluded.

Third, Mr. Patel should be allowed to present statements made by Smith to the Dekalb County police and/or Mr. Patel's attorney, Ahmad Crews, that Mr. Patel "wouldn't know" that the lumber was stolen "because, of course, I wouldn't have told, cuz if I did tell him, then, of course, he wouldn't have bought from me" and similar statements. Fed. R. Evid., Rules 801(d)(2)(A), 804(b)(3)(A).

Fourth, Plaintiff's proposed Exhibit X (chart of alleged damages) and similar evidence and argument should be excluded as vague, speculative and uncertain and likely to confuse the jury. *See Holland v. Holland Heating & Air Conditioning*, 432 S.E.2d 238, 241 (Ga. App. 1993) (evidence failed to provide a sufficient basis to allow a reasonable calculation of damage caused by the alleged tort); *Hixson-Hopkins Autoplex v. Custom Coaches*, 432 S.E.2d 224, 225 (Ga. App. 1993) (the losses must be directly traceable to the acts of the other party). Exhibit

X contains all inventory losses allegedly due to Defendant Smith's thefts, including for sales Smith made to his other customers, and is not limited to Mr. Patel's purchases from Smith. Plaintiff will be unable to support Exhibit X with evidence that Mr. Patel was involved in sales by Smith to others.

Fifth, the exclusion of any electronic records produced by Mr. Patel, but not relevant or admissible.

Sixth, Mr. Patel reserves the right to seek exclusion of witnesses or exhibits that were not produced during discovery.

Attachment I

## **PROPOSED VERDICT FORM**

Pursuant to Judge Boulee's Standing Order, paragraph III. s. iv., the parties shall file proposed verdict forms on CM/ECF at least a day prior to the pretrial conference, unless the Court orders otherwise.